UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0887-2 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| CYNTHIA JONES, | **Re: Defendant's Motion to Strike Section 851 Information** |
| Defendant. | |

Defendant Cynthia Jones has been charged with distribution and possession with intent to distribute fifty grams or more of crack cocaine within a thousand feet of an elementary school and with conspiracy to commit this felony. The government subsequently filed an Information pursuant to 21 U.S.C. section 851, seeking to increase defendant's mandatory minimum potential sentence from ten to twenty years. Now before the court is defendant's motion to strike the Section 851 Information. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND

The facts in this case revolve around the interactions of three individuals, defendant Cynthia Jones, co-defendant Wickett Morris, and an alleged government informant, Deneal Bobo. See Docket No. 54 (Balogh Dec.) ¶ 3. Jones is a resident of San Francisco. On September 8, 2000, she was allegedly convicted in Marin County Superior Court for a violation of California Health and

1 Safety Code section 11350(a), which prohibits the possession of a controlled substance and
2 constitutes a felony.[1]  Docket No. 36 (Information Pursuant to Section 851).

3       On April 11, 2008, Bobo, wearing a government video recording device, sought to purchase
4 drugs from Morris at a residence on Fell Street in San Francisco.  Id. ¶ 3-4.  On December 11, 2008,
5 federal agents and San Francisco police searched the Fell Street homes of Jones and Morris, who
6 lived two doors away from each other.  Id. ¶ 4.  Jones was present at her residence during the search
7 and provided identification to the law enforcement officers.  Id.  Four months later, on March 10,
8 2009, Jones was arrested, charged with the crimes described above, and transported to state custody.
9 Id. ¶ 5.  She was taken into federal custody on March 11, 2009.

10       On March 13, 2009, the Assistant U.S. Attorney prosecuting the case wrote a letter to
11 defense counsel advising defendant that the government would file an Information pursuant to 21
12 U.S.C. section 851.  Docket No. 54, Exh. B (March 13 Letter of Assistant U.S. Attorney to Defense
13 Counsel).  The Information would apprise the court of Ms. Jones's prior conviction, thereby
14 elevating the minimum sentence from ten to twenty years in prison, were she to be found guilty.
15 Docket No. 36 (Information Pursuant to Section 851).  According to the letter, defendant could
16 prevent the filing of the Information if she agreed to (1) submit to pretrial detention and not seek
17 pretrial release at any time; (2) decline to litigate the case in any way or bring any motion to compel
18 discovery, suppress evidence, or dismiss the indictment; and (3) plead guilty.  Docket No. 54, Exh.
19 B (March 13 Letter of Assistant U.S. Attorney to Defense Counsel).  The government followed this
20 request with another letter, dated March 19, 2009, clarifying that defendant would have to "provide
21 truthful and complete information" in exchange for the prosecutor's recommendation that his
22 superiors offer her a "cooperation agreement."  Id., Exh. C (March 19 Letter from Assistant U.S.
23 Attorney to Defense Counsel).  Any hypothetical plea bargain would be conditioned on defendant's
24 acceptance of these terms.  Id.  The letter also imposed a deadline of April 20, 2009, for the
25 interview to take place.  These letters were part of an office-wide policy of the U.S. Attorney, as
26 described by the Assistant U.S. Attorney in charge of the case to defense counsel.  Balogh Dec. ¶ 6.

2

On March 23, 2009, at a detention hearing, Magistrate Judge Chen denied the government's petition for pretrial detention of Jones. Id. ¶ 8. On March 31, 2009, the Assistant U.S. Attorney set the deadline for Jones to acquiesce to the government's request to April 2, 2009. Id. ¶ 9. The deadline was further extended to April 3 and then April 6. Id. ¶¶ 10-11. At defense counsel's request, the Assistant U.S. Attorney sent him a copy of the office's standard proffer agreement and explained, in the words of defense counsel, "Ms. Jones could give statements at that interview with or without the 'benefit' of this proffer agreement." Id. ¶ 11. The copy of the proffer agreement stipulates that statements made by defendant at her interview would not be used against defendant in the government's case-in-chief but could be used "to rebut any evidence offered, or factual assertions made, by or on behalf of [Jones] at any stage of a criminal prosecution (including but not limited to detention hearing, trial or sentencing)." Docket No. 54, Exh. F (Proffer Agreement).

In several letters, defense counsel asked the Assistant U.S. Attorney to reconsider the propriety of filing the Information, citing the circumstances of Ms. Jones's previous conviction and the remoteness of her involvement in the pending case. Balogh Dec. ¶ 12, see also Docket No. 54, Exh. D (April 2 Letter of Defense Counsel to Assistant U.S. Attorney). On April 16, 2009, the Assistant U.S. Attorney informed defense counsel of the impending filing of the Information the following day, unless defendant changed her mind. Docket No. 54, Exh. F (April 16 Letter of Assistant U.S. Attorney to Defense Counsel). On April 17, 2009, defense counsel wrote the Assistant U.S. Attorney explaining that defendant believed the government had "not agreed to let [her] cooperate." Id. ¶ 15. The same day, the government filed the Section 851 Information. Id. ¶ 17.

Defense counsel further declares that at no point prior to June 12, 2009, had the government tendered any plea agreement, nor did it present in writing or orally any terms of a proposed plea agreement. Id. ¶ 18. The Assistant U.S. Attorney in this case described the exchange of letters as a "cooperation proposal," Docket No. 64 (Caputo Dec.) ¶¶ 2-4, requiring that defendant waive her Fifth Amendment rights by submitting to a "pre-plea interview if she wished to pursue a cooperation agreement," id. ¶ 6. The Assistant U.S. Attorney further declares that he did not file the Section 851

3

1  Information while he and defense counsel were discussing the possibility of a cooperation agreement
2  because he desired to give Ms. Jones an opportunity to receive the maximum benefit if she decided
3  to cooperate. Id. ¶ 8.
4      On June 12, 2009, defendant filed the instant motion to strike the Section 851 Information,
5  alleging that the prosecutor's tactics amounted to vindictive prosecution and violated her Fifth
6  Amendment due process rights.

## LEGAL STANDARD

It is "patently unconstitutional" for a state agent to punish an accused individual for "do[ing] what the law plainly allows him to do." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). This is a due process violation "of the most basic sort." Id. When the prosecution seeks additional charges after an initial trial or appeal, there is a strong presumption that the government's actions are "improperly motivated." United States v. Goodwin, 457 U.S. 368, 381 (1982). In the context of alleged post-trial retaliation, the defendant need not prove that the prosecutor "acted in bad faith or maliciously"—a presumption of vindictiveness already exists. Blackledge v. Perry, 417 U.S. 21, 28 (1974). But if the alleged retaliation takes place at the pretrial stage, when the prosecution's case has not yet crystalized, this presumption no longer exists and, instead, using objective evidence, a defendant must prove actual vindictiveness on the part of the prosecutor. Goodwin, 457 U.S. at 380 n.2.

The Supreme Court has recognized "There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse." Bordenkircher, 434 U.S. at 365. The constitutionality of the government's specific actions in the instant case is an issue of first impression. To evaluate the propriety of the prosecution's tactics, the court must examine them in light of first principles of due process. See Miranda v. Arizona, 384 U.S. 436, 442 (1966) ("[O]ur holding is not an innovation in our jurisprudence, but is an application of principles long recognized and applied in other settings.").

4

DISCUSSION

I.    Vindictive Prosecution

Defendant argues that the government filed the Section 851 Information in retaliation to defendant's refusal to waive her Fifth Amendment rights. To support this theory, defendant cites the government's statements that the Information would not have been filed had defendant agreed to waive her rights. The government counters that defendant's theory of prosecutorial vindictiveness is a poor fit to the circumstances of this case.

It is exceedingly difficult to prove prosecutorial vindictiveness at the pretrial stage. Even if a prosecutor explicitly threatens the defendant, or states that "additional charges were brought to persuade the defendant to plead guilty," it does not prove that the additional charges "were brought solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion." Goodwin, 457 U.S. at 380 n.2. As a result, "although prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights violates due process in the pretrial setting as it does at other stages, in the context of pretrial plea negotiations vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right." United States v. Gamez-Orduno, 235 F.3d 453, 462 (9th Cir. 2000) (internal citations omitted); see also United States v. Gallegos-Curiel, 681 F.2d 1164, 1169 (9th Cir. 1982).

Both the Supreme Court and the Ninth Circuit have recognized the difficulty of distinguishing the prosecutorial tactic of charging light first and then increasing the charges when plea negotiations break down from charging heavy at the outset and then reducing the charges in return for defendant's cooperation. Bordenkircher, 434 U.S. at 363-64; Gamez-Orduno, 235 F.3d at 462-463. Reflecting a policy that prosecutors be allowed to use their discretion to bring charges as a bargaining chip during plea negotiations, the Ninth Circuit held that neither charging strategy violates due process. Gamez-Orduno, 235 F.3d at 463; United States v. Noushfar, 140 F.3d 1244, 1245 (9th Cir. 1998).

1   Here, defendant claims that she was the target of impermissible prosecutorial vindictiveness
2   at the pretrial stage. Indeed, when she refused to make a "truthful and complete" statement and
3   waive her Fifth Amendment self-incrimination rights in exchange for the promise that the
4   government would consider discussing a cooperation agreement, the prosecution threatened and then
5   filed an Information doubling the minimum prison term defendant was facing from ten to twenty
6   years. See Docket No. 54, Exh. C (March 19 Letter of U.S. Attorney to Defense Counsel).

7   Defendant urges the court to find vindictiveness simply because the filing of the Section 851
8   Information closely followed defendant's refusal to surrender her Fifth Amendment rights. As the
9   Ninth Circuit has indicated, the prosecution's motive for the filing could have been a desire to seek
10  the sentence it would have originally brought had it not been for the government's interest in
11  obtaining the information defendant possessed. Gamez-Orduno, 235 F.3d at 463. The government's
12  legitimate motives are thus indistinguishable from illegitimate ones. Consequently, defendant does
13  not meet her burden of proving that the prosecution was animated by a desire to retaliate rather than
14  by some other, permissible, purpose.

15  II.     Due Process

16  Although the circumstances of the instant action do not fit within the doctrinal rubric of
17  vindictive prosecution, the prosecutor's actions offend due process. The prosecution's duty is to
18  pursue truth and justice rather than merely the conviction of an accused. See Brady v. Maryland,
19  373 U.S. 83, 88 (1963). "Society wins not only when the guilty are convicted but when criminal
20  trials are fair; our system of the administration of justice suffers when any accused is treated
21  unfairly." Id. at 88. The prosecutor plays the role of architect of this process; his actions must
22  "comport with standards of justice." Id. "In representing the United States, a federal prosecutor has
23  a special duty not to impede the truth." United States v. Reyes, ___ F.3d ___, ___, 2009 WL
24  2501920, at *6 (9th Cir. Aug. 18, 2009).

25  In the present case, the prosecution's tactics short-circuited the truth-finding process. As the
26  Ninth Circuit has established, a prosecutor may use a Section 851 Information as a bargaining chip
27  during plea negotiations. United States v. VanDoren, 182 F.3d 1077, 1082 (9th Cir. 1999). This

28

6

does not mean, however, that the government is given *carte blanche* as to how it does so. In this case, the government's "offer" required defendant to give up numerous rights from the very outset of the criminal proceedings. Defendant was to (1) submit to pretrial detention and not seek pretrial release at any time;[2] (2) decline to litigate the case in any way or bring any motion to compel discovery, suppress evidence or dismiss the indictment; and (3) plead guilty. Balogh Dec., Exh. B (March 13 Letter from Assistant U.S. Attorney to Defense Counsel). Any hypothetical plea bargain was conditioned on defendant's acceptance of these terms. Id. Should the prosecution then have decided that defendant's statement was less than "truthful and complete," the government could use her statements against her and/or file the Section 851 Information. Moreover, the prosecution confronted defendant mere days after her arrest with a high-stakes "take it or leave it" "deal." Defendant was asked to forfeit a range of rights designed to protect the innocent from wrongful conviction—or face a doubling of the mandatory minimum if she were convicted. This is not simply a routine offer of a cooperation deal; it constitutes an attempt to forestall the adjudicative and truth-seeking process. The fact that defendant did not accept the government's proposed deal—assuming *arguendo* there was any deal to accept—does not affect the unlawfulness of the tactic. Under the specific circumstances of this case, the government's tactic crossed the line and violates due process.

The government argues that it has done no more than permissibly bargain with defendant for cooperation and a plea. Because it was within the government's discretion to file the Information at any time during pretrial proceedings, its offer to forego the filing in exchange for defendant's statement was, according to the government, simply a proposal for a mutually advantageous bargain. See United States v. Armstrong, 517 U.S. 456, 464 (1996) (noting that "the presumption of regularity" attaches to prosecutorial decisions). According to the prosecution's understanding of the "deal," defendant would likely have faced reduced charges in exchange for potentially valuable information that could have incriminated co-defendants or the defendant herself. Because the Information could have been filed at the outset of the proceedings, the government argues that nothing to which defendant was entitled was taken from her; indeed, she should have expected an Information to be filed as a routine matter. See Bordenkircher, 434 U.S. at 364 (instructing that "the

1  decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally
2  rests entirely in [the prosecutor's] discretion"). The government argues that the sole reason why it
3  did not file the Information first and negotiate later was a desire to maximize the benefits available
4  to the defendant should she decide to cooperate. Caputo Dec. ¶ 8. The decision to delay filing the
5  Information was thus a permissible exercise of prosecutorial discretion, according to the
6  government.

Yet "a prosecutor's discretion is subject to constitutional constraints." Armstrong, 517 U.S. at 464; accord Nunes v. Ramirez-Palmer, 485 F.3d 432, 441 (9th Cir. 2007). Such discretion is to be used within the parameters of constitutional due process, which, when observed, emphasize the pursuit of truth and justice over that of maximum sentences for all accused regardless of guilt. This is as true in the context of pretrial negotiations as in any other context. In Bordenkircher, the Supreme Court explicated the underpinnings of constitutionally permissible plea bargaining and pretrial negotiation. These depend on the "mutuality of advantage" to both defendants and prosecutors and their respective desires to avoid a trial. Bordenkircher, 434 U.S. at 363. "In the 'give-and-take' of plea bargaining, there is no . . . element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Id. Consequently, the parties' "give-and-take" requires that, while their bargaining positions may be unequal, they both be capable of bargaining. The defendant must face an offer which she may accept or reject.

A defendant is not free to accept or reject an offer where there is no offer. She is not free to accept or reject an offer where she is forced to forfeit nearly all of her constitutional rights. For example, here defendant would be forced to forego any challenge to any Fourth or Fifth Amendment violations that may have occurred, discovery of any exculpatory material to which she is entitled, and any challenge to a faulty indictment. This proves too much.

It is true that an offer need not be made in the context of plea negotiations, strictly defined; it may be made in order to induce defendant to cooperate with the prosecution in another criminal investigation. See Goodwin, 457 U.S. at 382; United States v. Gardner, 611 F.2d 770, 773 (9th Cir. 1980), accord United States v. Paguio, 114 F.3d 928, 930 (9th Cir. 1997) ("The government may

indict, even if its motive is to get cooperation in another case, where the government has probable cause . . . ."). Yet plaintiff is not "free to accept or reject the prosecution's offer," <u>Bordenkircher</u>, 434 U.S. at 363, where there simply is no offer. In this case, there was merely an offer to possibly make an offer—after defendant has forfeited her right against self-incrimination. The prosecution never extended an offer as part of either a plea bargain or a cooperation agreement. The prosecution's March 13 letter to defendant's counsel threatened the filing of a Section 851 Information if defendant did not "plead[] pursuant to a plea agreement." Docket No. 54, Exh. B (March 13 Assistant U.S. Attorney's Letter to Defense Counsel). However, the terms of such hypothetical plea agreement were not described in the letter or in any subsequent communication between the parties. The March 19 letter upped the ante: no plea agreement would be possible without an agreement to cooperate. Docket No. 54, Exh. C (March 19 Assistant U.S. Attorney's Letter to Defense Counsel). In turn, an agreement to cooperate would not be possible until defendant agreed to be interviewed by the government. <u>Id.</u> If the government determined that defendant provided "truthful and complete" information during the interview, a cooperation agreement might be offered to her. <u>Id.</u> Neither that letter nor any subsequent material describes the terms of the hypothetical cooperation agreement.[3]

Instead the government attempted to deprive defendant of all of her bargaining chips before even entering into plea negotiations, thereby violating <u>Bordenkircher</u>'s assumption that both parties be capable of bargaining. Once defendant had made the statement, she would have no more to give and would find herself entirely at the mercy of the prosecution, who would need nothing more from her. It would be within the prosecutor's discretion to offer no cooperation agreement and still file the Section 851 Information, simply by claiming that what defendant had told him was not what he had been looking for. In addition, any self-incriminatory statement in her "truthful and complete" declaration could now be used against her for impeachment or other purposes. This was not the "give-and-take" envisioned by the Supreme Court. This was no "give" and all "take" by the government.

9

In this case the government has embraced the Supreme Court's language in Goodwin that the "prosecutor should remain free before trial to exercise the broad discretion entrusted to him" and ignored the remainder of the sentence stating that the purpose of that discretion is "to determine the extent of the societal interest in prosecution." 457 U.S. at 382. It has totally neglected the Court's observation that:

> . . .[A] defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

Id. at 381.

What the Supreme Court considered "unrealistic" has now become a reality. Here, the government's request was not an offer but a preemptive ultimatum. In addition, the ultimatum required that defendant forfeit the procedural rights that the Court characterized as integral to our criminal justice system. Considering the totality of the circumstances in this case—including the broad slate of rights defendant was requested to surrender, the absence of any actual plea or cooperation deal, and the timing of the government's ultimatum—the government exercised its discretion in a manner that amounts to a due process violation and prosecutorial abuse.

III. Remedy

Potential remedies include dismissal of the indictment or the striking of the Information. In this case, the proportionate and just remedy is that requested by defendant: striking the Information, which was the mechanism by which the government violated defendant's due process rights.

CONCLUSION

For the foregoing reasons, defendant's motion to strike the Section 851 Information is GRANTED.

IT IS SO ORDERED.

Dated: September 9, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

10

**ENDNOTES**

1.     Defense counsel asserted in an April 2, 2009, letter that defendant's alleged prior conviction for possession of a personal use amount was diverted by the Superior Court, which never imposed any sentence. Balogh Dec., Exh. D.

2.     After the government's petition for pretrial detention was denied, the government revised the offer, dropping this demand.

3.     The government's reliance on the facts of United States v. Kent, No. CR-08-0890, (N.D. Cal. April 15, 2009) (Chesney, J.), is misplaced. The court does not have the benefit of a written opinion in that case and thus must rely on the transcript of the bench ruling. See Docket No. 63, Exh. 1 (Kent transcript). Whatever the persuasive value of that ruling, the circumstances of that case were considerably different. There, as in Goodwin, defendant had already engaged in actual plea negotiations and, in fact, liked the terms offered so much that he intended to plead guilty to the lesser charges without delivering on his part of the agreement. Id. at 10, 16. Defendant Kent's intention to plead guilty to the charges encompassed in a plea bargain provides the best evidence that there had been an offer. Id. at 13.